1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No.  1:17-cr-00142-DAD-BAM

12               Plaintiff,

13         v.                                       ORDER DENYING DEFENDANT JOSE
                                                    GUADALUPE ESPINO, JR.'S EMERGENCY
14    JOSE GUADALUPE ESPINO, JR.,                   MOTION TO REDUCE SENTENCE UNDER
                                                    18 U.S.C. § 3582(c)(1)(A)
15               Defendant.
                                                    (Doc. No. 87)
16

17

18         Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C.

19   § 3582(c)(1)(A) brought on behalf of defendant Jose Guadalupe Espino, Jr.  (Doc. No. 87.)  That

20   motion is based in part on the purported risks allegedly posed to defendant Espino by the ongoing

21   coronavirus ("COVID-19") pandemic.  For the reasons explained below, defendant's motion will

22   be denied.

23                                   **BACKGROUND**

24         On May 20, 2019, defendant Espino entered his plea of guilty to conspiracy to distribute

25   and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams

26   or more of a mixture or substance containing a detectable amount of methamphetamine as

27   charged in Count One of the indictment in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (Doc.

28   Nos. 56, 57.)  On October 7, 2019, the court sentenced defendant Espino to a term of

1    imprisonment of 60 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a

2    term of supervised release of 60 months.  (Doc. Nos. 78, 80.)  The court also imposed the

3    mandatory $100 special assessment.  (Doc. No. 80 at 6.)  The defendant was allowed to

4    voluntarily surrender to BOP custody at a later date.  (Doc. No. 78.)

5        Defendant is now serving his sentence at the Federal Correctional Institution, Mendota

6    ("FCI Mendota").  (Doc. No. 87 at 5.)  As of the date of this order, defendant Espino has served

7    approximately only 13 months of his 60-month custodial sentence.  (*See id.*; Doc. Nos. 88 at 4;

8    88-1 at 4.)

9        On August 24, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence

10   pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 81.)  The court then referred defendant's

11   motion to the Federal Defender's Office ("FDO").  (Doc. No. 82.)  On November 9, 2020,

12   appointed counsel filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on

13   behalf of defendant Espino.  (Doc. No. 87.)  The government filed its opposition to the pending

14   motion on December 10, 2020, and defendant filed a reply thereto on December 28, 2020.  (Doc.

15   Nos. 88, 93.)

16                                   **LEGAL STANDARD**

17       A court generally "may not modify a term of imprisonment once it has been imposed."

18   18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

19   of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

20   not be modified by a district court except in limited circumstances.").  Those limited

21   circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

22   452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

23   ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

24   § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

25   own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

26   In this regard, the FSA specifically provides that a court may

27                    upon motion of the defendant after the defendant has fully exhausted
                     all administrative rights to appeal a failure of the [BOP] to bring a
28

                                            2

motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)    extraordinary and compelling reasons warrant such a reduction; or

(ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported

3

1    The applicable policy statement with respect to compassionate release in the U.S.

2   Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3   compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also*

4   *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts

5   "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even

6   though that policy statement was issued before Congress passed the FSA and authorized

7   defendants to file compassionate release motions).  However, a large and growing number of

8   district courts across the country have concluded that because the Sentencing Commission has not

9   amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA

10  categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling

11  circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See,*

12  *e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United*

13  *States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

14    In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

15  defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

16  *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

17  has not specifically addressed the question of which party bears the burden in the context of a

18  motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

19  courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States*

20  *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

21  *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

22  ——————

23  no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the

24  prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*

25  *COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-

26  manafort-released-from-prison-amid-covid-19-fears.

27  [3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person

28  or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

4

1

**ANALYSIS**

2          As district courts have summarized, in analyzing whether a defendant is entitled to

3    compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

4    defendant has satisfied three requirements:

5                    First, as a threshold matter, the statute requires defendants to exhaust
                     administrative remedies.   18 U.S.C. § 3582(c)(1)(A).   Second, a
6                    district court may grant compassionate release only if "extraordinary
                     and compelling reasons warrant such a reduction" and "that such a
7                    reduction is consistent with applicable policy statements issued by
                     the Sentencing Commission." *Id*.  Third, the district court must also
8                    consider "the factors set forth in Section 3553(a) to the extent that
                     they are applicable." *Id*.
9

10   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-

11   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970;

12   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

13   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

14   "consistent with" the sentencing factors set forth in §3553(a)).

15   **A.      Administrative Exhaustion**

16          Defendant asserts, and the government does not dispute, that defendant has exhausted his

17   administrative remedies prior to filing his pending § 3582 motion.  (Doc. Nos. 87 at 5; 88 at 4–5.)

18   The court will accept the government's concession and will address the merits of defendant's

19   motion below.[4]

20   **B.      Extraordinary and Compelling Reasons**

21          According to the Sentencing Commission's policy statement, "extraordinary and

22   compelling reasons" warranting compassionate release may exist based on a defendant's medical

23   conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

24   _____

25   [4] It appears to the court that defendant Espino requested his compassionate release on June 24,
     2020, and his request was denied by the warden on June 30, 2020, well prior to defendant's filing
26   of his motion with this court.  Nonetheless, neither party addresses whether defendant Espino was
     required to administratively appeal the Warden's denial of his request.  *See* fn. 1, above.  Because
27   a failure to exhaust administrative remedies is normally viewed as an affirmative defense which
     must be pled and proven, the court will adopt the government's concession with respect to
28   administrative exhaustion.

1    § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the

2    policy statement at a time when only the BOP could bring a compassionate release motion, courts

3    agreed that it may be relied upon by defendants bringing their own motions for reductions in their

4    sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL

5    2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

6           The medical condition of a defendant may warrant the granting of compassionate release

7    by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

8    illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

9    probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

10   n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

11   release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

12   organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

13   debilitating physical or mental condition may warrant compassionate release, including when:

14                   The defendant is

15                   (I)  suffering from a serious physical or medical condition,

16                   (II)  suffering from a serious functional or cognitive impairment, or

17                   (III) experiencing deteriorating physical or mental health because of
                     the aging process,

18

19                   that substantially diminishes the ability of the defendant to provide
                     self-care within the environment of a correctional facility and from
                     which he or she is not expected to recover.

20

21   *Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

22   sufficient to warrant compassionate release under ordinary circumstances, many courts have

23   concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

24   particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp.

25   3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

26   suffering from conditions such as hypertension and diabetes are now at an even greater risk of

27   deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify

28   compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

1    (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr.

2    Rodriguez's health problems, proximity to his release date, and rehabilitation would not present

3    extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant

4    reducing his sentence.").

5              Compassionate release may also be warranted based on a defendant's age and other

6    related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

7    least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

8    of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

9    imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

10            Defendant Espino argues that extraordinary and compelling reasons warranting reduction

11   of his custodial sentence exist because:  (1) he suffers from health conditions that, according to

12   the Centers for Disease Control and Prevention ("CDC"), place him at a high risk of severe illness

13   from COVID-19, and (2) he is incarcerated at FCI Mendota, which currently has inmates and

14   staff who have tested positive for COVID-19.  (Doc. No. 87 at 5–6.)  In particular, defendant

15   asserts that he has a body mass index (BMI) of over forty (40) percent, suffers from asthma, and

16   may suffer from diabetes, all of which he contends place him at an increased risk of suffering

17   severe illness from COVID-19 based on CDC guidance identifying those medical conditions as

18   risk factors.  (*Id.* at 6–7.)  Defendant notes that although his diabetes is documented in medical

19   records from before his incarceration, his current medical records "do not show that he has high

20   blood sugar at this point."  (*Id.* at 7.)  Defendant, however, has not submitted any copies of his

21   current or previous medical records in support of his motion.  (*See id.*)

22            Defendant Espino also asserts in conclusory fashion that in light of his medical conditions

23   and his incarceration, he is unable to provide self-care during this pandemic because "it is

24   impossible for [defendant] Espino to follow the CDC's recommendations to protect himself from

25   exposure to this highly-transmissible disease" due to the conditions of his confinement at FCI

26   ───────────────
     [5]  This provision, however, does not apply here.  As noted above, defendant Espino has served
27   only approximately 13 months of his 60-month custodial sentence.  Moreover, defendant is only
     22 years old, and thus his age and age-related factors do not play a role in consideration of his
28   pending motion.

1   Mendota.  (*Id.* at 7–8.)  Further, defendant emphasizes that COVID-19 has spread in numerous

2   BOP facilities, including FCI Mendota, where three inmates and one staff member had tested

3   positive for COVID-19 at the time of the filing of his motion.  (*Id.* at 6.)  Accordingly, defendant

4   argues that his "heightened (several times over) risk of complications or death from COVID-19,

5   coupled with the extraordinary nature of the pandemic" constitute extraordinary and compelling

6   reasons that warrant his compassionate release.  (*Id.* at 8.)

7        In its opposition to the pending motion, the government argues that defendant Espino has

8   failed to carry his burden of establishing his eligibility for compassionate release because the

9   mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is

10  not an extraordinary and compelling reason justifying the granting of the requested relief, and

11  because defendant's health conditions do not diminish his ability to provide self-care at FCI

12  Mendota.  (Doc. No. 88 at 8.)  While the government does not dispute that defendant Espino has a

13  BMI of 50.6 and "technically involves an increased risk of severe illness from COVID-19"

14  according to the CDC, it asserts that the medical staff at FCI Mendota "is monitoring his situation

15  as needed."  (*Id.* at 9–10.)

16       In addition, the government disputes the severity of defendant's asthma condition,

17  focusing on the fact that defendant's medical records do not reflect that he has been diagnosed

18  with "moderate to severe" asthma.  (*Id.* at 10.)  According to the government, defendant was

19  recently diagnosed as suffering from asthma on July 16, 2020, when he reported to FCI Mendota

20  medical staff for the first time his history of asthma after requesting an inhaler at a clinic follow-

21  up appointment.  (*Id.*; Doc. No. 92 at 4–5 —sealed.)  Defendant was prescribed an albuterol

22  inhaler at that time, to be used four times a day.  (Doc. No. 92 at 4–5 —sealed.)  The government

23  notes that the U.S. Department of Health and Human Services defines asthma as moderate to

24  severe where "symptoms occur daily; inhaled short-acting asthma medication is used every day;

25  symptoms interfere with daily activities; nighttime symptoms occur more than 1 time a week, but

26  do not happen every night; or lung function tests are abnormal" and emphasizes that defendant

27  Espino's medical records do not reflect that he suffers from these symptoms.  (Doc. No. 88 at 10;

28  *see also* Doc. No. 92.)  The government also notes that the CDC recognizes only moderate to

8

1    severe asthma as a risk factor for becoming severely ill if one contracts the COVID-19 virus.

2    (Doc. No. 88 at 10.)  Thus, the government avers that because defendant's only health condition

3    that places him at high-risk for complications or severe illness from COVID-19 is his obesity,

4    which the government contends is being monitored as needed by prison medical staff, defendant

5    Espino " has not established that he is entitled to the rare and extraordinary relief" of

6    compassionate release.  (Doc. No. 88 at 10.)

7         In his reply, defendant Espino does not dispute the government's arguments.  (*See* Doc.

8    No. 93.)  Indeed, defendant's reply makes only passing reference to "his health issues" in

9    requesting the court to find that extraordinary and compelling reasons to reduce defendant

10   Espino's sentence exist.  (*Id.* at 6.)

11        It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical

12   conditions, including "moderate-to-severe asthma," type 2 diabetes, and obesity with a BMI of 30

13   or higher, are "at increased risk of severe illness from the virus that causes COVID-19," and

14   adults with type 1 diabetes "might be at an increased risk for severe illness from the virus that

15   causes COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control

16   and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

17   medical-conditions.html (last updated December 29, 2020); (Doc. Nos. 87 at 6–7; 95 at 18).

18   Here, the court finds that the absence of a formal diagnosis of moderate to severe asthma does not

19   necessarily mean that defendant Espino is not at an increased risk of suffering severe illness if he

20   were to contract COVID-19 due to his asthma condition, for which he has been prescribed an

21   albuterol inhaler by medical staff at FCI Mendota according to his medical records.  (Doc. No. 92

22   at 4 —sealed.)  Those medical records, however, do not reflect a diagnosis of diabetes or high

23   blood sugar.  (*See* Doc. No. 92 —sealed.)  The court also finds that the medical records submitted

24   in support of the pending motion establish that defendant has a BMI exceeding 40.  (*Id.* at 8 —

25   sealed.)  Defendant has shown that because he suffers from these medical conditions, he is at an

26   increased risk for suffering severe illness if he were to be re-infected with COVID-19.

27        However, defendant Espino has not shown, or even argued for that matter, that FCI

28   Mendota is presently unable to monitor and adequately treat his medical conditions. *See United*

9

1    *States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12,

2    2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for

3    compassionate release.") (internal quotation marks and citation omitted); *see also United States v.*

4    *McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020)

5    (relevant questions include the adequacy of the care and treatment being provided to the

6    defendant in BOP given his pre-existing conditions and concluding there was no evidence that the

7    circumstances surrounding his health or treatment were extraordinary or compelling.).  Here,

8    defendant Espino's medical records reflect that he has received regular medical treatment and

9    attention from FCI Mendota clinical physicians for his asthma and other medical conditions.  (*See*

10   Doc. No. 92 —sealed.)  In fact, the extensive medical records filed by the government suggest

11   that FCI Mendota is providing defendant Espino adequate medical care because he is being

12   prescribed and provided the medications necessary for his health conditions.  (*See* Doc. No. 82 —

13   sealed.)

14         As one court has acknowledged, "the presence of COVID 19 . . . necessitates a more

15   expansive interpretation of what self-care means" and thus the inability of individuals at high risk

16   of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and

17   maintain social distancing may constitute an inability to provide self-care under some

18   circumstances.  *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D.

19   Nev. April 24, 2020)) (citation omitted).  However, here, defendant Espino has not persuasively

20   argued that he is being prohibited from taking appropriate precautions to avoid contracting

21   COVID-19 or that his ability to provide self-care at FCI Mendota is currently substantially

22   diminished.  Rather, in his pending motion, defendant merely asserts in conclusory fashion that

23   "as an incarcerated person, it is impossible for Mr. Espino to follow the CDC's recommendations

24   to protect himself from exposure to this highly-transmissible disease."  (Doc. No. 87 at 7.)

25   Defendant Espino has not made any specific allegations regarding, for instance, his lack of access

26   to protective gear or cleaning and sanitizing supplies, or as to his lack of ability to social distance

27   at FCI Mendota.  Rather, he simply states in his motion that "3 inmates and one staff are currently

28   infected" with COVID-19 at FCI Mendota and makes general assertions about the "accelerated

1   spread in prisons and jails across the country." (*Id.* at 6.)  He has not presented any evidence

2   regarding the conditions that he is currently facing at FCI Mendota, or the ways in which those

3   conditions render him unable to provide self-care.

4       Defendant argues generally that COVID-19 has an "accelerated spread in prisons and jails

5   across the country," citing statistics showing that, nationwide, over 17,000 inmates and 2,000

6   BOP staff have tested positive for the virus and 127 inmates have died from the virus.  (Doc. No.

7   87 at 6.)  In response, the government contends that the BOP has implemented procedures and

8   policies to mitigate the risks of COVID-19 spreading in its facilities, including providing masks

9   and cleaning supplies to inmates, and sanitizing common areas multiple times a day.  (Doc. No.

10  88 at 5.)  According to the government, there were only fifteen confirmed active COVID-19 cases

11  among any prisoners or staff members at FCI Mendota as of December 10, 2020, and twenty-

12  three recovered inmate and staff cases.  (*Id.* at 5–6.)  In his reply, defendant Espino concedes that

13  FCI Mendota only had five inmates and four staff members with active positive COVID-19 tests

14  at the time of that filing, but asserts that, because other BOP institutions have higher numbers of

15  positive cases, "[i]t seems more of a matter of luck that FCI Mendota has not had more infections,

16  and it may just be a matter of time until their infection rate increases."  (Doc. No. 93 at 6.)

17      As of the date of this order on January 11, 2021, FCI Mendota reports only fourteen

18  inmates and five staff members with active positive tests for COVID-19.[6]  *See* Federal Bureau of

19  Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited

20  January 11, 2021).[7]  It appears that although the number of positive active cases has increased

21  somewhat, FCI Mendota is currently still adequately managing the outbreak of COVID-19, with

22  no reported deaths and relatively low numbers of active cases at any given time.  *See, e.g.*, *United*

23  *States v. Votaw*, No. 2:11-cr-00514-TLN, 2020 WL 7122069, at *2 (E.D. Cal. Dec. 4, 2020)

24  (noting only one active case of COVID-19 and no related deaths at FCI Mendota); *United States*

---

25  [6]  FCI Mendota has a total population of 793 inmates.  FCI Mendota, FEDERAL BUREAU OF

26  PRISONS, https://www.bop.gov/locations/institutions/men/ (last visited Jan. 11, 2021).

27  [7]  While the undersigned does not necessarily accept these reported numbers at face value in light
    of current CDC guidelines with respect to both testing and the manner of counting "active cases,"

28  there is also no evidence before the court challenging those reported numbers in this case.

1    *v. Marquez*, No. 1:19-cr-00173-NONE-SKO, 2020 WL 6044319, at *5 (E.D. Cal. Oct. 13, 2020)

2    (noting FCI Mendota reported four active cases of COVID-19, fourteen recovered cases, and no

3    related deaths); *United States v. Rogers*, No. 1:16-cr-00072-NONE-SKO, 2020 WL 5440352, at

4    *5 (E.D. Cal. Sept. 10, 2020) (noting FCI Mendota reported three active cases of COVID-19, nine

5    recovered cases, and no related deaths); *United States v. Partida*, No. 3:17-cr-08260-DGC, 2020

6    WL 3050705, at *6 (D. Ariz. June 8, 2020) (noting no reports of positive COVID-19 cases at FCI

7    Mendota).  Moreover, aside from conclusory statements addressing the subject, defendant does

8    not describe the conditions of his confinement in FCI Mendota or claim that they are such that it

9    hinders his ability to provide self-care for his asthma or his obesity.  Based on the evidence

10   currently before this court, there is no basis upon which to find that the medical staff at FCI

11   Mendota is unable to adequately monitor and care for defendant Espino.

12            Accordingly, the court concludes that defendant Espino has not met his burden of

13   demonstrating extraordinary and compelling reasons for compassionate release under

14   § 3582(c)(1)(A).  Therefore, his motion for compassionate release will be denied at this time.

15   **C.       Consistency With the § 3553(a) Factors**

16            Finally, even if defendant Espino's motion was supported by a showing of extraordinary

17   and compelling reasons supporting his compassionate release, the undersigned is not persuaded

18   that the requested reduction in his sentence would be consistent with consideration of the

19   sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 461 F. Supp. 3d at 979.

20   /////

21

22   [8]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
     shall consider:  the nature and circumstances of the offense and the history and characteristics of
23   the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
     respect for the law, provide just punishment for the offense, afford adequate deterrence, protect
24   the public from further crimes of the defendant and provide the defendant with needed
     educational or vocational training, medical care, or other correctional treatment in the most
25   effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
     established for the applicable category of offense committed by the applicable category of
26   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
     Commission; the need to avoid unwarranted sentence disparities among defendants with similar
27   records who have been found guilty of similar conduct; and the need to provide restitution to any
28   victims of the offense.

1    As noted above, defendant Espino is currently serving a 60-month sentence of

2    imprisonment for conspiracy to distribute and possess with intent to distribute controlled

3    substances.  (Doc. Nos. 78, 80.)  At the time of his sentencing on October 7, 2019, he was found

4    to be responsible for ten pounds of methamphetamine.  (Doc. No. 72 at 6.)  With his early

5    acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense

6    level was 31 and that his lack of a criminal history placed him in criminal history category I,

7    resulting in an advisory sentencing guideline range calling for a term of imprisonment of between

8    120 and 135 months in light of the mandatory minimum sentence that the offense of conviction

9    carried with it.  (*Id*. at 15.)  The probation officer recommended a low-end of the guideline range

10    sentence of 120 months in BOP custody.  (*Id*.)  After considering the government's motion as

11    well as all applicable § 3553(a) factors and the circumstances of this case, the undersigned

12    departed and varied downward from the advisory guideline range and sentenced defendant to a

13    60-month term of imprisonment.  (Doc. No. 80 at 2.)

14    In his pending motion, defendant contends that "keeping [him] in custody for the balance

15    of his sentence exceeds what is necessary to accomplish the goals of sentencing and puts him at

16    risk of serious complications from COVID-19 or even death."  (Doc. No. 87 at 12.)  Defendant

17    argues that he has no criminal history and only committed the offense for which he is incarcerated

18    to help his family pay its debts.  (*Id*. at 11.)  Defendant Espino contends that because he has a

19    standing offer to return to work with his prior employer at a higher pay rate and for a larger

20    number of hours per week, and because his mother has since become employed, that the financial

21    pressure on defendant will be lessened.  (*Id*. at 11, 13.)  Defendant also argues that he poses a low

22    chance of recidivism, citing his desire to raise and support his two young children, the fourteen

23    programs he has completed while incarcerated at FCI Mendota, and his enrollment in a GED

24    program.  (*Id*. at 11–12; Doc. No. 87-2 at 1.)

25    The government counters that a reduction of defendant's sentence would not be consistent

26    with consideration of the § 3553(a) sentencing factors.  (Doc. No. 88 at 10–12.)  The government

27    argues that defendant continues to pose a danger to the community because "[defendant] Espino

28    was involved with a large scale drug trafficking organization and was armed at the time of his

13

1    arrest . . . and the defense has not presented any evidence to show that the danger has been

2    mitigated." (*Id.* at 11.)  The government underscores the seriousness of defendant's offense,

3    noting that he "is held accountable for the 10 pounds (4.53 kilograms) of methamphetamine that

4    he delivered" along with his co-defendant.  (*Id.* at 3.)  The government argues that defendant's

5    actions in committing the offense "reveal a flagrant and dangerous disrespect for the rule of law."

6    (*Id.* at 11.)

7         In his reply, defendant Espino counters that he "does not pose a danger to society" and

8    that a reduction of his sentence would be consistent with consideration of the § 3553(a)

9    sentencing factors.  (Doc. No. 93 at 4.)  He argues that his role in the offense underlying his

10   conviction was to serve "only [as] a driver providing transportation for the drugs in a one-off

11   incident."  (*Id.* at 5.)  Although he concedes that his offense involved "a large amount of

12   methamphetamine," defendant emphasizes that "it was an amount he didn't procure" and that

13   "[a]ll he did was drive."  (*Id.*)  Defendant also contends that he was "legally able to possess" the

14   firearm found in his car at the time of the offense.  (*Id.*)  Defendant Espino reiterates in his reply

15   that his proposed release plan includes a job with his former employer for an available position

16   that the employer has put on hold for him pending the court's ruling on this motion.  (*Id.* at 5, 7;

17   *see also* Doc. No. 93-1 at 1.)

18        It is true that defendant Espino has no history of criminal convictions prior to this offense.

19   (Doc. No. 72 at 8.)  The court also recognizes and commends defendant on his rehabilitation

20   efforts, though rehabilitation alone is not enough to warrant compassionate release.  *See* 28

21   U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.  Nonetheless, "'[t]he length of the sentence

22   remaining is an additional factor to consider in any compassionate release analysis,' with a longer

23   remaining sentence weighing against granting any such motion."  *United States v. Shayota*, No.

24   1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) (quoting *United States*

25   *v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also*

26   *United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21,

27   2020) (denying motions for compassionate release, noting, "the Court finds it significant that

28   defendants have served far less than half of their sentences").  Here, as of the date of this order,

14

1    defendant Espino has served only about 13 months of his 60-month sentence, or approximately

2    21.6 percent.  (*See* Doc. Nos. 87 at 5; 88 at 4; 88-1 at 4.)  Indeed, the statutory mandatory

3    minimum sentence for defendant's offense of conviction was a ten-year prison term, and

4    defendant received only a sentence of five years when this court departed and varied downward

5    after fully considering the circumstances, including all of those asserted by defendant now.

6    Indeed, it was consideration of those circumstances which, in part, the court relied upon in

7    departing and varying down to a sentence of 60 months in what would have been a mandatory

8    minimum 120 month sentence case under other circumstances.  In the court's view, a reduction of

9    defendant's 60-month sentence effectively to one of just 13 months would not adequately reflect

10    the seriousness of his offense or conviction, promote respect for the law, provide just punishment,

11    or afford adequate deterrence to criminal conduct.[9]  *See United States v. Purry*, No. 2:14-cr-

12    00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993

13    at *5; 18 U.S.C. § 3553(a).

14    _____

15    [9]  Defendant requests that the court either reduce his sentence to time served or amend the
conditions of his supervised release to require him to serve what would have been the remaining
portion of his custodial term on home confinement, followed by time in the Teen Challenge

16    substance abuse treatment program.  (Doc. No. 87 at 5.)  First, the CARES Act "'authorizes the
BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."

17    *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020)
(quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan.

18    Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL

19    3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home
confinement made in conjunction with his motion for compassionate release because "the court

20    has no authority to designate the place of confinement" because the "Bureau of Prisons has the
statutory authority to choose the locations where prisoners serve their sentence."); *United States

21    v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that
the CARES Act "does not authorize the court to order defendant's placement in home

22    confinement").  The district court may only impose home detention as a condition of supervised
release, rather than as part of a sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5,

23    n.6 & *7.  Accordingly, to do as defendant requests, the court would be required to reduce his

24    sentence to one of time served (i.e., 13 months) and modify the conditions of supervised release
to require home confinement for 47 months.  The court is unwilling to do so for the reasons set

25    forth above.  The BOP knows its capabilities to effectively and appropriately care for defendant
Espino in a custodial setting.  If the BOP determines that the defendant should be released to

26    home confinement to serve his sentence under the Attorney General's expanded authority in that

27    regard (*see* fn. 2, above), the court trusts it will do so.  The issue that this court resolves is merely
whether in its view, under the applicable legal standards governing compassionate release,

28    defendant's sentence should be reduced.

15

1    Thus, on balance, the court finds that granting defendant's motion and reducing his

2   sentence to one of time served would not be consistent with the § 3553(a) sentencing factors.

3                                          **CONCLUSION**

4    Because defendant Espino has failed to demonstrate that "extraordinary and compelling"

5   reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a

6   reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C.

7   § 3553(a), his motion for compassionate release (Doc. No. 87) is denied.

8   IT IS SO ORDERED.

9       Dated:    **January 11, 2021**                              _____

10                                                        UNITED STATES DISTRICT JUDGE